**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MLB PLAYERS, INC., | |
| *Plaintiff,* | Case No. 24-cv-07958-RA |
| *v.* | Hon. Ronnie Abrams |
| UNDERDOG SPORTS, INC., *d/b/a Underdog Fantasy*, UNDERDOG SPORTS, LLC, UNDERDOG SPORTS WAGERING, LLC, | |
| *Defendants.* | |

## <u>UNDERDOG'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>

**WILMER CUTLER PICKERING
HALE AND DORR LLP**

David Gringer
Emily Barnet
Jared V. Grubow
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
david.gringer@wilmerhale.com
emily.barnet@wilmerhale.com
jared.grubow@wilmerhale.com

Isley Gostin
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
isley.gostin@wilmerhale.com

*Counsel for Underdog Sports, Inc.
Underdog Sports LLC, and Underdog
Wagering LLC*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................3

      A.    Underdog Sports Launches A Sports-Betting Platform In North Carolina ..................................................................................................3

      B.    Underdog Heavily Promotes Underdog Fantasy, But Not Sportsbook, On Social Media .......................................................5

      C.    Underdog Acquires Licenses For MLB Betting Data And Player Photos.......................................................................................................7

      D.    Plaintiff Files This Lawsuit Against FanDuel And Underdog And FanDuel Removes With Underdog's Consent ............................8

ARGUMENT .........................................................................................................................9

I.    Plaintiff's Claims Are Preempted By The Copyright Act And Subject To Removal ...........................................................................................................9

      A.    Plaintiff's Right Of Publicity Claim Is Completely Preempted By The Copyright Act ..................................................................10

           1.    Plaintiff's Right Of Publicity Claim Over Display Of Copyrighted Photos Falls Directly Within The Subject Matter Of The Copyright Act .......................................10

           2.    Plaintiff's Claim Is Equivalent To A Copyright Claim ................14

      B.    Plaintiff's Right Of Publicity Claim Is Impliedly Preempted By The Copyright Act ..................................................................18

II.    Underdog Joined FanDuel's Copyright Preemption Argument By Consenting To Removal, And Plaintiff's Dismissal Of One Defendant Does Not Prevent Removal By The Other .......................................................................................22

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ahn v. Midway Mfg. Co.*,
    965 F. Supp. 1134 (N.D. Ill. 1997) ...................................................................12

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006) ........................................................................14

*Baltimore Orioles Inc. v. Major League Baseball Players Associations*,
    805 F.2d 663 (7th Cir. 1986) ....................................................................1, 11, 12

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989)............................................................................................18

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004)........................................................................10, 15

*Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*,
    2013 WL 822173 (S.D.N.Y. Mar. 6, 2013) .......................................................12

*C.B.C. Dist. & Mkt., Inc., v. Major League Baseball Advanced Media*, L.P.,
    505 F.3d 818 (8th Cir. 2007) ............................................................................13

*Chi., Rock Island & Pac. Ry. Co. v. Martin*,
    178 U.S. 245 (1900)............................................................................................22

*Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.*,
    150 F. Supp. 2d 566 (S.D.N.Y. 2001).................................................................20

*Dryer v. Nat'l Football League*,
    814 F.3d 938 (8th Cir. 2016) ............................................................................12

*Daniels v. FanDuel Inc.*,
    109 N.E.3d 390 (Ind. 2018) .............................................................................13

*Forest Park Pics v. Universal Television Net., Inc.*,
    683 F.3d 424 (2d Cir. 2012)..............................................................................10

*Franklin Nat'l Bank Sec. Litig. v. Andersen*,
    532 F.2d 842 (2d Cir. 1976)..............................................................................22

*Gautier v. Pro-Football, Inc.*,
    107 N.E.2d 485 (N.Y. 1952)..............................................................................20

*Golan v. Holder*,
    565 U.S. 302 (2012)............................................................................................16

*Harper & Row Publishers, Inc. v. Nation Enterps.*,
  723 F.2d 195 (2d Cir. 1983)................................................................................15

*Hudson Furniture, Inc. v. Mizrahi*,
  2023 WL 6214908 (S.D.N.Y. Sept. 25, 2023)....................................................17

*Jackson v. Roberts (In re Jackson)*,
  972 F.3d 25 (2d Cir. 2020)......................................................................... *passim*

*Jules Jordan Video, Inc. v. 14492 Canada Inc.*,
  617 F.3d 1146 (9th Cir. 2010) ..........................................................................23

*Landham v. Lewis Galoob Toys, Inc.*,
  227 F.3d 619 (6th Cir. 2000) ............................................................................12

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ....................................................................11, 12

*McGucken v. Newsweek LLC*,
  2022 WL 836786 (S.D.N.Y. Mar. 21, 2022) ....................................................16

*Melendez v. Sirius XM Radio*,
  50 F.4th 294 (2d Cir. 2022) ..............................................................15, 16, 17

*Molina v. Phx. Sound Inc.*,
  747 N.Y.S.2d 227 (N.Y. App. Div. 1st Dep't 2002) ........................................17

*Mourabit v. Klein*,
  393 F. Supp. 3d 353 (S.D.N.Y. 2019)..........................................................1, 10

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
  105 F.3d 841 (2d Cir. 1997)..............................................................................12

*Ortiz v. City of New York*,
  2013 WL 2413724 (S.D.N.Y. June 4, 2013) ....................................................22

*Passelaigue v. Getty Images (US), Inc.*,
  2018 WL 1156011 (S.D.N.Y. Mar. 1, 2018) ....................................................17

*Pensado v. Makhdomi*,
  2011 WL 189717, (S.D.N.Y. May 12, 2011) ....................................................24

*Pirone v. MacMillan, Inc.*,
  894 F.2d 579 (2d Cir. 1990)..............................................................................13

*Ray v. ESPN, Inc.*,
  2014 WL 2766187 (W.D. Mis. Apr. 8, 2014)....................................................12

*Romano v. Kazacos,*
    609 F.3d 512 (2d Cir. 2010)...................................................................................4

*Rosemont Enters. Inc. v. Urban Sys,*
    42 A.D.2d 544 (N.Y. App. Div. 1st Dep't 1973)..................................................21

*Shake Shack Enter., LLC v. Brand Design Co.,*
    708 F. Supp. 3d 515 (S.D.N.Y. 2023).................................................................23

*Shepard v. European Pressphoto Agency,*
    291 F. Supp. 3d 465 (S.D.N.Y. 2017).................................................................17

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    332 F.3d 116 (2d Cir. 2003)..................................................................................9

*Taylor v. Medtronic, Inc.,*
    15 F.4th 148 (2d Cir. 2021) ................................................................................23

*Toney v. L'Oreal USA, Inc.,*
    406 F.3d 905 (7th Cir. 2005) .........................................................................12, 13

*Town of Stratford v. City of Bridgeport,*
    2010 WL 11566477 (D. Conn. Jun. 18, 2010).....................................................9

*Vinci v. Am. Can Co.,*
    591 N.E.2d 793 (Ohio 8th Dist Ct. Appl. 1990)................................................14

*Woolf v. Precision Techs. LLC,*
    2024 WL 4223650 (W.D.N.Y. Sept. 18, 2024) ...................................................4

## STATUTES, RULES, AND REGULATIONS

17 U.S.C. § 101...............................................................................................1, 11, 16

17 U.S.C. § 102.....................................................................................................1, 10

17 U.S.C. § 106......................................................................................1, 9, 16, 19

17 U.S.C. § 201..........................................................................................................19

17 U.S.C. § 301..................................................................................................1, 9, 23

Cal Civ. Code § 3344..................................................................................................17

N.Y. Civil Rights Law §§ 50, 51 ..................................................................1, 3, 17, 20

## INTRODUCTION

Plaintiff MLBPI seeks to stop Defendants ("Underdog") from displaying copyrighted photos of Major League Baseball players.  That claim is governed by the federal Copyright Act, which grants copyright holders the right to control the display and distribution of their works and expressly preempts all state law claims that seek to enforce rights equivalent to those protected by the Act.  Plaintiff cannot bring a copyright claim, however, because it does not own the copyright to those photos.  Plaintiff's state law claim under New York's right to publicity statute (New York Civil Rights Law Sections 50 & 51) is nothing more than an attempted end run around the Copyright Act—which is exactly what the doctrine of preemption prohibits.  Plaintiff's state law claim is preempted by the Copyright Act in two independent ways and thus belongs in federal court, where it should be promptly dismissed.

*First*, Plaintiff's claim is *completely* preempted by the Copyright Act.  The Copyright Act has express and extraordinary preemptive force.  *See Mourabit v. Klein*, 393 F. Supp. 3d 353, 359 (S.D.N.Y. 2019).  Section 301 of the Copyright Act states that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright" are preempted. 17 U.S.C. § 301(a).  That includes the right "to do and to authorize" the distribution and public display of copies of copyrighted works, like photographs.  *Id.* § 106(3), (5).  That is exactly the right that Plaintiff seeks to enforce here: the right to control the distribution and display of copyrighted MLB player photos.

A two-part test governs whether a state law claim is completely preempted by the Copyright Act, and Plaintiff's right of publicity claim plainly satisfies both parts.  *First*, photos of MLB players fall within the "subject matter of copyright" because they are "fixed" "pictorial … works."  17 U.S.C. §§ 101, 102(a)(5); *see Baltimore Orioles Inc. v. Major League Baseball Players Associations*, 805 F.2d 663 (7th Cir. 1986) (holding that videotaped baseball games fell

within the subject matter of copyright). *Second*, the claimed rights are "equivalent to" the exclusive rights provided by federal copyright law because the Copyright Act protects against the unauthorized display of copyrighted works—the right Plaintiff seeks to enforce. *See Jackson v. Roberts (In re Jackson)*, 972 F.3d 25, 34 (2d Cir. 2020) (holding that state law right to publicity claims were "equivalent to" copyright claims).

To avoid complete preemption, Plaintiff's motion dresses up its claim as one alleging false endorsement, but the Complaint does not, and cannot, allege that the display of nearly every MLB player's image on Underdog's sports betting app suggests endorsement by any or all of those players. And the Complaint carefully avoids any allegation that Underdog's reference to player names or their identities apart from display of the copyrighted photos in the Sportsbook is the gravamen of their right of publicity claim. Plaintiff's only other attempt to demonstrate alleged endorsement relies on a couple of social media posts, which do not promote or even reference Underdog's sports betting app, and thus cannot save their state law claim from being completely preempted.

*Second*, Plaintiff's state law claim is also impliedly preempted by the Copyright Act. A claim is impliedly preempted by the Copyright Act if it seeks to "exert control over a work within the subject matter of the Copyright Act under a mechanism different from the one instituted by the law of copyright (i.e., a state law claim)" and serves no substantial state interest. *Jackson*, 972 F.3d at 37. Plaintiff expressly agreed via the Major League Baseball collective bargaining agreement that the MLB teams, and not the players themselves or Plaintiff, would control the rights to these images. Thus, Plaintiff's suit against Underdog seeks to restrict rights that are granted under the Copyright Act to someone else. And Plaintiff's claim does not vindicate *any* state interest—let alone a substantial one. It is black letter law that New York's right of publicity statute

applies only to commercial uses of a person's image "within [New York] state," N.Y. Civ. Rights Law §§ 50, 51, and, as the complaint acknowledges, Underdog's sports betting app can only be used to place bets by those physically present in North Carolina; not in New York. *See* Ex. E to Notice of Removal ¶ 13, Dkt. 1-5 ("Am. Compl."). That fact is not only fatal to Plaintiff's claim on the merits, but it also demonstrates why implied preemption is appropriate, providing a second basis for removal.

Evidently aware of the weakness of its position on preemption, Plaintiff's motion instead focuses on procedure, claiming that because Underdog "consented" to FanDuel's notice of removal rather than "joining" it, FanDuel's exit from the case prevents Underdog from removing. This argument has no merit and makes little sense. It is well established that a party who consents to removal has joined in the arguments presented in the notice. A contrary result would require duplicative filings by consenting defendants to safeguard against the possibility that the defendant who initiated removal (often, for no reason other than beating the other defendants to the courthouse door) might later be dismissed from the case. Precedent sensibly rejects such a requirement. Underdog's consent to FanDuel's removal carries over with full force, even with FanDuel out of the case.

## BACKGROUND

### A.    Underdog Sports Launches A Sports-Betting Platform In North Carolina

Underdog Sports Holdings, Inc. is a sports entertainment company. It has three primary and distinct lines of business: paid fantasy sports contests, sports wagering, and sports media. *See*

Declaration of Elizabeth Keevil ("Keevil Decl.") ¶ 4.[1]  The first two—fantasy sports and sports wagering—are distinct industries:  While both are highly regulated by state law, they are governed by different legal frameworks that determine when, where, and by whom they can be offered.  *Id.*

Since 2020, Underdog has operated a fantasy sports platform that allows consumers to enter paid fantasy sports contests on its website and through a mobile application.  *See* Am. Compl. ¶ 22.  This platform, Underdog Fantasy, offers daily, weekly, and season-long fantasy games for basketball (National Basketball Association (NBA)), football (National Football League (NFL)), hockey (National Hockey League (NHL)), golf (Professional Golf Association (PGA)), and baseball (Major League Baseball (MLB)), and other sports.  *See* Keevil Decl. ¶ 5. Underdog's fantasy sports platform is available to consumers over the age of 18 in 40 states, including New York.  *Id.*

On March 11, 2024, Underdog launched its first sports betting product, Underdog Sportsbook.  Am. Compl. ¶ 23; Keevil Decl. ¶ 4.  Underdog Sportsbook is currently available for betting only for participants physically present in North Carolina; betting is not available for participants in New York.  *Id.* ¶ 13; Keevil Decl. ¶¶ 6-7.  In mobile app stores, the Underdog Sportsbook application is named "North Carolina UD Sportsbook," and Underdog's website expressly states that the Sportsbook is "Live now in North Carolina" and that you must be "present in North Carolina" to gamble.  Keevil Decl. ¶¶ 8-10 & Ex. A.  Consumers who are not physically present in North Carolina cannot place wagers on the sportsbook application or website, and

---

[1] Underdog submits the declarations of Elizabeth Keevil ("Keevil Decl.") and David Gringer ("Gringer Decl.") in support of removal as well as the exhibits attached thereto.  *See Woolf v. Precision Techs. LLC*, 2024 WL 4223650, at *3 (W.D.N.Y. Sept. 18, 2024) (court can consider "documents outside the pleadings submitted in connection with a motion to remand" (citing *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010)).  Alphabetically labeled exhibits refer to the Keevil Declaration; numerically labeled exhibits refer to the Gringer Declaration.

Underdog employs sophisticated geolocation software to prevent persons outside of North Carolina from doing so.  Keevil Decl. ¶ 7.

One type of bet that Underdog allows North Carolina participants to place are "player prop" bets.  A player prop—short for proposition—is a bet on a specific individual player's performance, without regard to the outcome of the sports games in which the player participates.  Am. Compl. ¶ 21; Keevil Decl. ¶ 13.  For example, participants could place prop bets on whether Mets pitcher Kodai Senga will strike out five or more batters in a game or whether Mets third baseman Mark Vientos will hit a home run.

In the Sportsbook, Underdog displays baseball player images in two ways: alongside player prop bets and in player profile pages.  Am. Compl. ¶¶ 28, 31; Keevil Decl. ¶¶ 16-17.  In both cases, the photo is part of a larger packet of statistical and betting information.  Am. Compl. ¶¶ 28, 31; Keevil Decl. ¶¶ 16-17.  For player prop bets, Sportsbook participants see the name of player, the type of bets being offered, and the odds associated with that bet, together with a small thumbnail image of the player associated with the player prop bet.  *See* Am. Compl. ¶ 28; Keevil Decl. ¶ 16.  Clicking on the players' image or name brings a participant to the player's Player Profile page.  There, participants can view the player's current season statistics, the score of any current game, and the betting odds for the various prop bets.  *See* Am. Compl. ¶ 31; Keevil Decl. ¶ 17.  Those statistics are drawn, in real-time, from Major League Baseball's official data stream.  Keevil Decl. ¶¶ 12, 17.

B.    **Underdog Heavily Promotes Underdog Fantasy, But Not Sportsbook, On Social Media**

Underdog has separate accounts on popular social media platforms for the Sportsbook and its Fantasy app.  The Sportsbook Instagram account (@udsportsbook) has made only six posts, none of which used MLB player images.  Keevil Decl. ¶ 23.  Underdog posts more often on its

Fantasy Instagram account (@underdogfantasy), where it has over 107K followers and has posted over 2,100 times. *Id.* ¶ 19. Through its @underdogfantasy account, Underdog reports on newsworthy events in the world of sports, including Major League Baseball. *Id.* ¶ 20.[2] The account includes original content from Underdog's MLB-related podcasts, reporting newsworthy player stories and providing commentary on current MLB events. *Id.*

The @underdogfantasy account generally does not promote the Sportsbook. Out of the 2100+ posts on its account (covering all different sports), the @underdogfantasy account has posted about the Sportsbook three times, none of which used any MLB player images. *See* Keevil Decl. Exs. B, C, D. The @underdogfantasy account posts identified in the Complaint are prominently marked with the "Underdog Fantasy" mark and are exclusively about Underdog's fantasy contests. *See* Am. Compl. ¶¶ 36-37; Keevil Decl. ¶ 21. The @underdogfantasy account posts in the Complaint are not about the Sportsbook or its offerings. Keevil Decl. ¶ 21. North Carolina law requires specific responsible gaming disclosures as part of any advertisement for a North Carolina sports wagering product;[3] these specific disclosures do not appear on the posts in the Complaint for the basic reason that those posts are not promoting Underdog's North Carolina sports wagering product.

---

[2] *See* Gringer Decl. Ex. 1 ("Underdog provides a wide array of content from former professional athletes and thought leaders, to provide expertise and a fun user experience for all fans.").

[3] N.C. H.B. 347 § 18C-910(e) (2023) ("The interactive sports wagering operator … shall ensure that all advertisements and marketing of sports wagers, the sports wagering platform, and other sports wager related commercial offerings meet all of the following requirements…."); *see* Keevil Decl. Exs. B & D (Instagram posts containing required disclosure: "Must be 21+ to gamble and present in North Carolina. Gambling problem? Call 1-877-718-5543, visit morethanagame.nc.gov or call 1-800-GAMBLER. Terms, conditions and restrictions apply.")

### C.    Underdog Acquires Licenses For MLB Betting Data And Player Photos

Underdog became an authorized gaming operator ("AGO") with Major League Baseball in 2022.  Keevil Decl. ¶ 11.  As an AGO, Underdog contracted with an authorized data distributor, Sportradar, to receive and display the official stream of MLB betting data and other real-time MLB statistics.  *Id.* ¶¶ 11-12.[4]  That data is fed into Underdog's platform and informs the odds for each prop bet that the Sportsbook offers.  *Id.* ¶ 12.[5]

Before launching the Sportsbook, Underdog also acquired MLB player photographs to use in connection with the Sportsbook app.  *Id.* ¶ 14.  Underdog believes that the copyright in the photographs that it acquired are owned by the MLB or its teams.  *Id.* ¶ 15.[6]  Under the collectively bargained 2022-2026 Basic Agreement and Uniform Player's Contract, to which the MLB Players Association is a party, MLB players "agree[d] that [their] picture may be taken for still photographs … at such times as the Club may designate and agrees that all rights in such pictures shall belong to the Club."  *See* Notice of Removal ¶ 10, Dkt. 1; Gringer Decl. Ex. 4 at p.406 § 3.(c).  MLB and the clubs then prepare the photos and transfer the rights to those photographs, Dkt. 1 ¶¶ 18-19, to photo distribution partners, like Getty Images—a global supplier and licensor of stock and editorial photography, and the official photographic partner of Major League Baseball[7]—who sub-license them.  Underdog acquired the MLB player headshots from Getty Images.  Keevil Decl. ¶ 14.

---

[4] *See* Gringer Decl. Ex. 2.

[5] *See also* Gringer Decl. Ex. 3 (describing the MLB official statistics stream, and relevant statistics, that Sportradar partners can receive in real-time through Sportradar's Application Program Interface, or API).

[6] *See* Gringer Decl. Ex. 4.

[7] *See* Gringer Decl. Ex. 5.

### D.    Plaintiff Files This Lawsuit Against FanDuel And Underdog And FanDuel Removes With Underdog's Consent

Plaintiff filed this lawsuit against FanDuel and Underdog in the Supreme Court of the State of New York, New York County on September 16, 2024.  *See* Ex. A to Notice of Removal, Dkt. 1-1; *see generally* Am. Compl.  As to Underdog, Plaintiff alleges violations of New York's right of publicity law based on the use of unspecified MLB player photographs in the Sportsbook.  *See, e.g.*, Am. Compl. ¶ 45 ("Defendants knowingly and without consent used the *images* of three or more MLB players within their respective sportsbook betting platforms." (emphasis added)). Plaintiff also asserts that Underdog displays player names and images on social media to promote the Sportsbook, but in doing so it confuses Underdog's fantasy contests with the Sportsbook; the *only* examples it cites are posts from Underdog *Fantasy*'s Instagram account about *fantasy* contests that participants of the *Fantasy* app can play.  Am. Compl. ¶¶ 36-37.  There are no allegations that Underdog violated MLB players' publicity rights in connection with fantasy sports.

On October 18, 2024, FanDuel filed a notice of removal, removing the case to this Court pursuant to 28 U.S.C. §§ 1331, 1337, 1338, 1441(a), 1446, 1454.  Underdog consented to the removal and expressly reserved all rights, claims, defenses, and arguments available to it.  *See* Ex. G to Notice of Removal, Dkt. 1-7.  On November 15, 2024, the business day before its Motion to Remand was due, Plaintiff voluntarily dismissed FanDuel pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  *See* Dkts. 22, 23.  That same day and over the weekend, Plaintiff sent numerous emails with increasing and escalating threats to Underdog and its counsel, including threatening Rule 11 sanctions, if Underdog did not agree to remand.  Gringer Decl. ¶ 8.

## ARGUMENT

### I.    Plaintiff's Claims Are Preempted By The Copyright Act And Subject To Removal

This lawsuit belongs in federal court and should swiftly be dismissed because Plaintiff's right of publicity claim is preempted by the federal Copyright Act. *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 132 (2d Cir. 2003) (Newman, J., concurring) ("[I]f the district court determines that the criteria for complete preemption have been met, the district court, after ruling in favor of its subject matter jurisdiction, is then obliged to dismiss for failure to state a claim.").

The preemption doctrine applies here because the Copyright Act preempts Plaintiff's claim in two independent ways. *First*, Plaintiff's state law claim is completely preempted. The Copyright Act provides rights holders with an exclusive bundle of rights, including the right "to do and to authorize" the distribution and "display [of] copyrighted works," including photographs. 17 U.S.C. § 106(3), (5). The Act also provides the exclusive remedy to rights holders seeking to control the distribution and public display of their copyrighted works, expressly preempting any person from seeking to restrict those rights through any other "legal or equitable rights that are equivalent." 17 U.S.C. § 301(a). Because Plaintiff asserts only rights that are equivalent to the exclusive right to distribute and display copyrighted photos granted by the Copyright Act, its state law claim is completely preempted.

*Second*, Plaintiff's claim is impliedly preempted because the claim raises no independent and substantial New York state interest granted through the right of publicity and so frustrates the Copyright Act's objective to allow rights holders to publicly distribute and display copyrighted works. Because Plaintiff's claim conflicts with the Copyright Act's objectives, and the Copyright Act has extraordinary preemptive force, implied preemption is sufficient to establish removal jurisdiction. *See Town of Stratford v. City of Bridgeport*, 2010 WL 11566477, at *3-6 (D. Conn.

9

Jun. 18, 2010) (Federal Aviation Act's implied preemption of conflicting state law sufficient for federal removal jurisdiction).

Under both the complete and implied preemption analysis, binding Second Circuit authority in *Jackson* controls the outcome: Plaintiff's claim is preempted, belongs in federal court, and must be dismissed.

### A.    Plaintiff's Right Of Publicity Claim Is Completely Preempted By The Copyright Act

Plaintiff's right of publicity claim is completely preempted by the Copyright Act, justifying removal and compelling dismissal. *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (affirming denial of motion to remand where removal was based on complete preemption of state law claim by the Copyright Act). "The Copyright Act completely preempts a state law claim if ([1]) the work[s] at issue come[] within the subject matter of copyright [the subject matter requirement] and ([2]) the right being asserted is equivalent to any of the exclusive rights within the general scope of copyright [the general scope or 'equivalence' requirement]." *Mourabit*, 393 F. Supp. 3d at 359 (citing *Forest Park Pics v. Universal Television Net., Inc.*, 683 F.3d 424, 429 (2d Cir. 2012)). Both prongs of that test are satisfied here.

### 1.    Plaintiff's Right Of Publicity Claim Over Display Of Copyrighted Photos Falls Directly Within The Subject Matter Of The Copyright Act

"The subject matter requirement is satisfied if the [state law] claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." *Briarpatch*, 373 F.3d at 305.

*First*, the player photos fall squarely within the ambit of one of the categories of copyrightable works listed in the Copyright Act: "pictorial … works." 17 U.S.C. § 102(a)(5). *See*

*e.g.*, *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010-1013 (9th Cir. 2017) (photographs of college athletes in online photo library "pictorial" works).

*Second*, the MLB player photographs are fixed in a tangible medium of expression. "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy… by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. Other courts have already found that depictions of athletes in photos or video are fixed for copyright purposes and those decisions should be followed here. In *Baltimore Orioles*, the Seventh Circuit held that right of publicity claims brought by the same Plaintiff regarding game telecasts were preempted by the Copyright Act, reasoning that "[b]y virtue of being videotaped … the Players' performances are fixed in tangible form, and any rights of publicity in their performances that are equivalent to the rights contained in the copyright of the telecast are preempted." 805 F.2d at 675. That reasoning applies with even greater force to the works here—player stock photos. *See Maloney*, 853 F.3d at 1011 (photographs of college athletes in online photo library are "fixed in tangible medium of expression").

Plaintiff's only argument on the subject-matter requirement is that "persona[s] and likeness[es]" are not "within the subject matter of copyright." Mot. at 8. That is true as far as it goes. But that statement is of no use to Plaintiff because courts have squarely held that photographs and other images are within the subject matter of copyright unless they are used for commercial purposes without consent. *See, e.g.*, *Baltimore Orioles*, 805 F.2d at 675 & n.22; *see also infra* p.12 (discussing cases). And the cases that Plaintiff cites in arguing otherwise (Mot. at 8 & n.5) are distinguishable for just those reasons: they all involved use of the plaintiff's persona or likeness for commercial purposes without consent or did not implicate use of a previously fixed work. In

*Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, 2013 WL 822173, at *14 (S.D.N.Y. Mar. 6, 2013) (cited Mot. at 8), the defendant used Bruce Lee's likeness without authorization to solicit the sale of t-shirts—i.e., it traded on Bruce Lee's persona for an unauthorized commercial purpose. Similarly, *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 623 (6th Cir. 2000), involved sale of a toy that "evoke[d]" the plaintiff's personal identity without consent. And in *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 909 (7th Cir. 2005), defendant had the right to use the image of plaintiff only until 2000, the image in question had previously been used to endorse a product, the parties' contract (and defendant's right to use the image) expired, and defendant continued using the photograph after expiration of the parties' contract to advertise the product.

*Toney* then went on to reconcile its holding with that of *Baltimore Orioles*, explaining that right of publicity claims are not preempted where "without the consent of the player," the Defendant used the player's name to advertise its product. 406 F.3d at 911. However, "state laws that intrude on the domain of copyright" remain preempted. *Id*. As Judge Leval explained the distinction in *Jackson*, the "crucial issue" is whether Underdog's use of the images "could reasonably be construed by the intended audience as a false implication of [] endorsement or sponsorship." 972 F.3d at 29. Thus, *Baltimore Orioles* applies directly here, as do the numerous other cases involving images of athletes that held the subject matter requirement of the Copyright Act preemption analysis satisfied. *See Maloney*, 853 F.3d at 1011 (college athlete's photographs); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848-849 (2d Cir. 1997) (broadcast of professional basketball player games); *Dryer v. Nat'l Football League*, 814 F.3d 938, 942 (8th Cir. 2016) (footage of football players); *Ahn v. Midway Mfg. Co.*, 965 F. Supp. 1134 (N.D. Ill. 1997) (martial artists depicted on arcade games); *Ray v. ESPN, Inc.*, 2014 WL 2766187, at *5 (W.D. Mis.

Apr. 8, 2014) ("plaintiff's wrestling performances were recorded with his active participation and consent" in copyrighted films).

Jackson makes clear that the exception from Toney for claims of false endorsement does not apply here. In Jackson, the Second Circuit held that a state law right to publicity claim was preempted by the Copyright Act. In reaching that conclusion, the Court reasoned that "[a] person's appearance in a copyrightable work … will in most (but not all) circumstances serve to communicate that the person depicted has consented to appear in that work, and has, at least to some extent, endorsed the work itself. That kind of implication of endorsement is immaterial." 972 F.3d at 47 & n.27. Plaintiff alleges nothing more here: The Complaint here includes no allegation suggesting that Underdog's use of player photos in the Sportsbook conveys the players' endorsement of that product. And it also carefully avoids any suggestion that any use of players' names and identities, separate from the pictures, conveys endorsement.[8] That is with good reason. As Plaintiff concedes, Underdog displays player images for every MLB player for every game in its Sportsbook. Am. Compl. ¶ 28 ("each game has a series of prop bets a user can place on each MLB player in the lineup for that game"). And it is well established that "the inclusion of all players [] cannot create a false impression that some particular player with 'star power' is endorsing [the] product[]." C.B.C. Dist. & Mkt., Inc., v. Major League Baseball Advanced Media, L.P., 505 F.3d 818, 824 (8th Cir. 2007); accord Pirone v. MacMillan, Inc., 894 F.2d 579, 584 (2d Cir. 1990) (calendar depicting multiple baseball players "would [not lead] any consumer [to] reasonably believe that [an individual baseball player] sponsored the calendar"); Daniels v. FanDuel Inc., 109 N.E.3d 390, 397 (Ind. 2018) ("in the context of fantasy sports … the risk of

---

[8] Plaintiff concedes that conveying the players' identities is necessary for the Sportsbook because it enables participants to make informed decisions. See Am. Compl. ¶ 33 (recognizing the "core information bettors require to make informed decisions" include "an athlete's name").

unauthorized advertising is minimal" because "when information and statistical data … is presented on a fantasy sports website [] it would be difficult to draw the conclusion that the athletes are endorsing any particular product"). As for Underdog's use of player images on social media, as discussed, *supra* pp.5-6, Underdog has never used MLB player images in connection with posts about the Sportsbook. Keevil Decl. ¶¶ 21-23. These images therefore necessarily are not used in a manner that falsely suggests endorsement of the Sportsbook.

In addition, the nature of Underdog's display in the Sportsbook is purely informational. As described, *supra* p.5, the small thumbnail image is merely part of the design of the application and the full package of information a participant receives; the photo is incidental to the directly related factual and newsworthy information about the player. Courts routinely hold that such informational uses of names and images are not tantamount to endorsement. For example, in *Vinci v. Am. Can Co.*, 591 N.E.2d 793, 794 (Ohio 8th Dist Ct. Appl. 1990), the Ohio Supreme Court held that where "[r]eference to the athletes and their accomplishments was purely information[,] there was no implication that the athletes used, supported, or promoted the product." Similarly, in *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006), the Eleventh Circuit held that Amazon did not display a book cover with plaintiff's photo for a commercial purpose because the display was "not an endorsement or promotion of any product of service" but instead purely informational.

Because there is no allegation (and could be no plausible allegation) that Underdog's display falsely communicates endorsement of the Sportsbook, Plaintiff's claim is within the subject matter of copyright.

### 2.    Plaintiff's Claim Is Equivalent To A Copyright Claim

The second prong of the preemption test—the general scope or equivalency requirement— is satisfied if the "state law claims [do] not include any extra elements that make it qualitatively

different from a copyright infringement claim." *Briarpatch*, 373 F.3d at 305. The Second Circuit "take[s] a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright claim." *Id.* The mere existence of an element in a statute not covered by copyright law is insufficient, standing alone, to escape preemption. Determining whether an extra element makes the claim qualitatively different requires "a holistic evaluation of the nature of the 'rights sought to be enforced,'" *Melendez v. Sirius XM Radio*, 50 F.4th 294, 307 (2d Cir. 2022) (citing *Jackson*, 972 F.3d at 44 n.17), and "the theories in which the matter is thought to be protected." *Briarpatch*, 373 F.3d at 306; *see also Jackson*, 972 F.3d at 43 (explaining the test is not "mechanical").

Plaintiff's right of publicity claim satisfies the equivalency requirement because it seeks to control the distribution and display of copyrighted photos, not the commercial exploitation of the players' likenesses, and so is qualitatively identical to a copyright claim.

Plaintiff's allegations show that the right that Plaintiff "seek[s] to protect is coextensive with an exclusive right already safeguarded by the Act—namely, control over reproduction and derivative use of copyrighted material." *Harper & Row Publishers, Inc. v. Nation Enterps.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985). The crux of Plaintiff's complaint is "[d]espite not being licensed by MLBPI to use MLB player images … nearly every active MLB player's image *is displayed* on [Underdog's] website[] and mobile app[]." Am. Compl. ¶ 5 (emphasis added). The right to display photos falls directly within the bundle of exclusive rights granted by the Copyright Act: "the rights 'to do and to authorize' the reproduction,

distribution, and display of a work." *Jackson*, 972 F.3d at 43 (quoting 17 U.S.C. § 106).[9]  Plaintiff is seeking to enforce a rent on Underdog's display of copyrighted player photos even though it does not own the copyright, making its claim equivalent to a copyright claim.

Plaintiff argues that the equivalency requirement is not satisfied because "New York's right of publicity statute 'contains the additional element of use of one's image for advertising or trade purposes.'"  Mot. at 8.  But controlling Second Circuit precedent has already rejected the position that Plaintiff takes here.  In *Jackson*, the Second Circuit held that mere inclusion of a "'commercial purpose' element" in a state right of publicity law "does not sufficiently 'change[] the nature of [a similar state law claim] so that it is qualitatively different from a copyright infringement claim.'" 972 F.3d at 53-54.  That is because "commercial interests have always played an enormous role in copyright law."  *Id.* at 53.  Indeed, "[t]he first statute establishing a right in authors to control copies of their works, the Statute of Anne, proclaimed that its purpose was to enable authors to earn money from their writings, so as to induce them to produce 'useful books.'"  *Id.* (citing *Golan v. Holder*, 565 U.S. 302, 347 (2012) (Breyer, J., dissenting)).  The Second Circuit reaffirmed its position that a "commercial purpose" element in a state statute, alone, is insufficient to remove a claim from copyright preemption two years later in *Melendez*, assessing California's right of publicity statute.  50 F.4th at 308.

Contrary to Plaintiffs' claim that *Jackson* and *Melendez* have "nothing to do with the New York right of publicity statute," Mot. 9, the New York statute's "trade" or "advertising" purpose elements constitute "commercial" purposes equivalent to the commercial purpose elements in the

---

[9] The Copyright Act defines "display" as "to show a copy of" a work.  17 U.S.C. § 101.  And a photograph is displayed online when the website or app "project[s] [] an image on a screen." *McGucken v. Newsweek LLC*, 2022 WL 836786, at *6 (S.D.N.Y. Mar. 21, 2022) (citing H.R. Rep. 94-1467, at 80 (1976)).

Connecticut common law and California statute at issue in those cases.[10]   The Appellate Division recently made this clear in *Khozissova v. Ralph Lauren Corp.*, explaining that Sections 50 and 51 "'were drafted narrowly to encompass only the *commercial use* of an individual's name or likeness and no more.'"  228 A.D.3d 508, 509 (1st Dep't App. Div. 2024) (no right of publicity claim where fashion model's likeness used in newsworthy documentary about designer Ralph Lauren). Therefore, *Jackson* and *Melendez* control:  the mere existence of the "commercial" use or purpose element in New York's statute does not automatically bring Plaintiff's New York right of publicity claim outside of copyright preemption.

None of the cases cited by Plaintiff (Mot. at 8 & n.6) disturb that conclusion; nor could they.  Three of them—*Molina v. Phx. Sound Inc.*, 747 N.Y.S.2d 227 (N.Y. App. Div. 1st Dep't 2002), *Shepard v. European Pressphoto Agency*, 291 F. Supp. 3d 465, 471 (S.D.N.Y. 2017), and *Passelaigue v. Getty Images (US), Inc.*, 2018 WL 1156011 (S.D.N.Y. Mar. 1, 2018)—were decided before *Jackson* and should be read as abrogated.  The only other case Plaintiff cites, *Hudson Furniture, Inc. v. Mizrahi*, 2023 WL 6214908, at *11 n.7 (S.D.N.Y. Sept. 25, 2023), reaches its conclusion in a footnote, citing only to the abrogated *Passalaigue* for the proposition, and conducts no further analysis.

In another effort to avoid *Jackson* and *Melendez*, Plaintiff retreats once again to its sole ground for avoiding preemption: that the display of MLB player images implies their endorsement

---

[10] The Connecticut common law right, derived through the Restatement (Second) of Torts § 652C, *see Jackson*, 972 F.3d at 38, and California statutes are similar to New York's.  The Restatement implies the element of commercial use: "the defendant must have appropriated ... the reputation, prestige, social or *commercial standing*, public interest or other *values* of the plaintiff's name or likeness."  Restatement (Second) of Torts § 652C, cmt. c (emphasis added).  And the California statute mirrors New York's: "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent."  Cal Civ. Code § 3344.

of the Sportsbook.  Mot. 9 (citing *Jackson*, 972 F.3d at 37-47).  That is wrong, for the reasons explained.  *See supra* pp.12-14.  It is, however, telling that Plaintiff makes this argument at all.  In doing so, Plaintiff implicitly acknowledges its centrality to the preemption inquiry and given that the best it can muster is the conclusory statement in its brief that "Underdog uses MLB player names and images in advertising for its sportsbook platform" (Mot. at 8-9), it is clear that Plaintiff cannot establish the absence of preemption.

In sum, because what Plaintiff actually seeks is the right to prevent Underdog from displaying copyrighted photographs, its right of publicity claim is equivalent to a copyright claim and preempted.

**B.    Plaintiff's Right Of Publicity Claim Is Impliedly Preempted By The Copyright Act**

Plaintiff's right of publicity claim is also impliedly preempted by the Copyright Act.  "The doctrine of implied preemption will bar a state law claim where, 'under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Jackson*, 972 F.3d at 34.  As the Second Circuit has recognized, right of publicity claims can be used to "restrict (and in some cases prohibit) the publication and dissemination of works of authorship governed by the [Copyright] Act."  *Id.* "[W]hen a person undertakes to exert control over a work within the subject matter of the Copyright Act under a mechanism different from the one instituted by the law of copyright (i.e., a state law claim), implied preemption may bar the claim unless the state-created right vindicates a substantial state law interest, i.e. an 'interest[] outside the sphere of congressional concern in the [copyright] laws.'"  *Id.* at 37 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 159 (1989)).  "[T]he less substantial the state law rights invoked, or the more the invocation of the state right amounts to little more than camouflage for an attempt to exercise control over the

exploitation of a copyright, the more likely that courts will find the state law claim to be preempted." *Id.* at 38. Here, implied preemption applies because Plaintiff's claim would impede the rights holder's distribution and display of copyrighted photos and vindicates no substantial New York state law interest.

*First*, Plaintiff's suit is aimed at restricting the right to distribute and display copyrighted photographs. That interferes with a fundamental purpose of the Copyright Act—providing rights holders exclusive control over the dissemination of works of authorship to be displayed publicly, including through licensing. *See* 17 U.S.C. § 106(3) (providing rights holder with "exclusive rights to do and to authorize … distribut[ion of] copies … of the copyrighted work by sale or other transfer of ownership, or by rental, lease, or lending"); *id.* § 201(d) ("Any of the exclusive rights comprised in a copyright … may be transferred"). As explained, Underdog believes that rights to the photographs are owned by MLB or its individual teams. *See* Keevil Decl. ¶ 15. Moreover, the distribution and display of player images are governed by the MLB Uniform Player Contract, in which Plaintiff (on behalf of the MLB players) agreed "that [the player's] picture may be taken for still photographs … at such times as the Club may designate and agrees that all rights in such pictures shall belong to the Club." *See* Notice of Removal ¶ 10, Dkt. 1; Gringer Decl. Ex. 4 p.406 § 3.(c). Thus, the MLB teams and their licensees, not Plaintiff, control the right to distribute these photos for display.

*Second*, Plaintiff's claim does not "assert[] a sufficiently substantial state interest, distinct from the interests underlying federal copyright law, to evade preemption." *Jackson*, 972 F.3d at 38. The Second Circuit explained that, in determining whether there is a sufficient state interest, "[t]he first question is whether [the plaintiff] even states an actionable claim of right of [publicity]." *Id.* Plaintiff does not. The New York right of publicity statute applies only to infringement of

publicity rights "within th[e] state" of New York.  N.Y. Civil Rights Law § 51 ("Any person whose name, portrait, picture, likeness or voice is used *within this state* for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action." (emphasis added)).  Given this clear statutory text, it is black letter law that "[o]ut-of-state uses of plaintiff's likeness for trade or advertising purposes are not actionable under New York law." *Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.*, 150 F. Supp. 2d 566, 575 (S.D.N.Y. 2001).  Plaintiff's claim is solely about Underdog's use of the photos in connection with betting on the Sportsbook:  it alleges that it was injured by Underdog's use of player photos "in advertising and promotions for its sportsbook platform[]" to "drive business to the … Sportsbook platform" so that "more customers [] use and place bets." Am. Compl. ¶¶ 32-33, 35, 38, Prayer For Relief ¶¶ 2, 4.  And, as Plaintiff admits, only participants physically in North Carolina can place bets on the Sportsbook.  Am. Compl.  ¶ 13.

Nor does it matter that the images are visible in New York.  *See* Am. Compl. ¶ 13.  As Plaintiff acknowledges, sportsbooks only make money when "customers [] use and *place* bets" on the platform; New York-based participants cannot place bets on Defendants' Sportsbook.  Am. Compl. ¶ 33 (emphasis added); Keevil Decl. ¶¶ 6-7.  And the New York statute does not apply if there is no in-state commercial benefit flowing from the use.  *Gautier v. Pro-Football, Inc.*, 107 N.E.2d 485, 487 (N.Y. 1952) is illustrative.   There, the American Broadcasting Company broadcast the performance of an animal trainer's half-time show in New York.  *Id.*  The performance aired between ads for a cigarette company.  Although the performer's likeness was "used within th[e] state" of New York, the New York Court of Appeals held that he could not maintain a right of publicity claim because the use was not connected to any commercial activity or exploitation in New York.  *Id.* (affirming appellate division holding that "mere use on a

sponsored program … does not constitute a violation of the statute as 'advertising purposes'"); *see also cf. Rosemont Enters. Inc. v. Urban Sys*, 42 A.D.2d 544, 544 (N.Y. App. Div. 1st Dep't 1973) (injunction for dissemination of game invoking persona of Howard Hughes required to be limited to only commercial "activities … in the State of New York.").

Again, *Jackson* dictates the result here. In *Jackson*, the Second Circuit concluded that even if the plaintiff had stated a claim under the state law at issue, the claim still did not seek to vindicate any substantial state law interests distinct from those furthered by the copyright law, and was thus impliedly preempted. 972 F.3d at 39. In reaching that conclusion, the court reasoned that the defendant had not used the plaintiff's name or persona in a way that falsely implied an endorsement by the plaintiff or in a derogatory manner—and as a result, "the substantiality of [plaintiff's] interest in his invocation of Connecticut's right of publicity is therefore minimal." *Id.* That reasoning applies with even more force here. As explained, Plaintiff does not, and cannot, allege that Defendants' use of player photos in the Sportsbook conveys the players' endorsement of that product. *Supra* pp.12-14. Nor does Plaintiff allege that the use of the player images is derogatory. Accordingly, even if Plaintiff could show a use within New York as required by the statute—and it cannot—New York has no *substantial* interest in the rights asserted by Plaintiff here because Plaintiff cannot show false endorsement.

For these reasons, "[a]llowing [Plaintiff's] right of publicity suit to proceed would interfere with the functioning of the copyright system" because "although ostensibly an invocation of [its] rights to control the use of [MLB players'] persona in publicity, [Plaintiff's claim] is so devoid of the substantial interests protected by [the New York statute] that it is more properly seen as a thinly disguised effort [by Plaintiff] … —who owns no copyright interest in the work—to nonetheless exert control over its distribution." *Jackson*, 972 F.3d at 41. It is therefore impliedly preempted.

21

II.    **Underdog Joined FanDuel's Copyright Preemption Argument By Consenting To Removal, And Plaintiff's Dismissal Of One Defendant Does Not Prevent Removal By The Other**

With Second Circuit controlling authority precluding its arguments on preemption, it is not surprising that Plaintiff spills significant ink claiming that Underdog somehow waived removal. Its efforts are unavailing.  Plaintiff grounds most of its motion for remand on a flawed procedural argument that "Underdog did not join FanDuel's removal; rather, it merely 'consented' to it and did not advance any of its own arguments supporting removal or the Court's exercise of subject matter jurisdiction."  Mot. at 3.  But it is undisputed that Underdog consented to removal on the grounds laid out by FanDuel's notice, *see* Ex. G to Notice of Removal, Dkt. 1-7, and the Second Circuit has long described consenting defendants under the removal statutes as "join[ing] in the removal petition."  *Ortiz v. City of New York*, 2013 WL 2413724, at *3 & n.1 (S.D.N.Y. June 4, 2013) (collecting cases and finding that nothing in the statute or legislative history of the Section 1446(b)(2)(A) indicated that "Congress intended to draw a distinction between 'joining' and 'consenting,'" to a notice of removal) (citing *Franklin Nat'l Bank Sec. Litig. v. Andersen*, 532 F.2d 842, 846 (2d Cir. 1976)); *see also* 16 Moore's Fed. Practice, § 107.42 ("In general, all defendants must join in the notice of removal.").  By consenting to FanDuel's notice of removal, Underdog therefore necessarily joined in its arguments.

A contrary conclusion would open the door to jurisdictional machinations not contemplated by the removal statute.  And that is exactly what Plaintiff attempts here: avoiding removal by dismissing the defendant who filed the notice.  Allowing such tactics would fly in the face of the unanimity requirement—which has been the law of removal for over a century, *see Chi., Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248 (1900) (requiring all defendants to join in the removal application)—by granting plaintiffs a mandatory right to remand against defendants that did not file their own notice, even though such defendants were required to unambiguously join

22

the notice that was filed for the removal to be perfected.  Accepting Plaintiff's argument here also undermines the interests served by requiring such unambiguous consent of all defendants.  *See Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021) ("The unanimity requirement serves the interest of plaintiffs, defendants and the courts because: it … prevent[s] defendants from splitting litigation … preclude[s] one defendant from imposing its forum choice on codefendants … [and] prevent[s] needless duplication of litigation.").

Furthermore, Underdog raises the copyright preemption arguments laid out in FanDuel's notice for removal and Plaintiff's allegations are mirror images as between FanDuel and Underdog.  *See, e.g.*, Am. Compl., Prayer for Relief ¶¶ 1-3.  Plaintiff addressed these very arguments in its motion for remand.  Thus, Underdog does not raise any "new substantive argument for removal" as Plaintiff contends (Mot. at 7), and there is no prejudice or surprise to Plaintiff.

Plaintiff next asserts that Underdog is "differently situated than FanDuel" (Mot. at 7) because "there is no allegation or indication that Underdog was a party to any of" the agreements between MLB and FanDuel set forth in the notice of remand.  Plaintiff's position appears to be that to remove based on copyright preemption, Underdog must have alleged that it had a license to display the copyrighted MLB player photographs.  That is incorrect.  It is well established that "[w]hether a claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses" in the challenged works.  *Jules Jordan Video, Inc. v. 14492 Canada Inc.*, 617 F.3d 1146, 1154 (9th Cir. 2010); *see also Shake Shack Enter., LLC v. Brand Design Co.*, 708 F. Supp. 3d 515, 523-531 (S.D.N.Y. 2023) (lack of licensing agreement irrelevant to copyright preemption analysis).  Accordingly, whether Underdog has a license to display the images is not necessary, or even relevant, to establish copyright preemption and removability.

Plaintiff also takes the meritless position (Mot. at 7) that the case should be remanded because it voluntarily dismissed FanDuel.  This argument too is nonsensical and unsurprisingly, the cases it cites are distinguishable.  In both, the court remanded because the remaining defendants did not or could not assert a basis for removal.  In *Smith v. Anchor Packing Co.*, remand was appropriate because "the sole defendant asserting" the "federal defense" was dismissed.  2008 WL 4899258, at *3 (S.D.N.Y. Nov. 12, 2008).  Similarly, in *Pensado v. Makhdomi*, removal was based solely on certain federal employee defendants that could be sued only under the Federal Tort Claims Act.  2011 WL 1899717, at *1 (S.D.N.Y. May 12, 2011).  After the court dismissed those federal defendants, the remaining defendants had no basis for removal.  *Id.* at *2.  Here, in contrast, Underdog has raised, and raises again here, a basis for removal that applies to the claim against it.  FanDuel's dismissal is therefore irrelevant; Plaintiff's procedural argument should be rejected.

## CONCLUSION

For the foregoing reasons, the motion to remand should be denied.

Dated: December 2, 2024
  New York, NY

Respectfully Submitted,

  _/s/ David Gringer_____
  David Gringer
  Emily Barnet
  Jared V. Grubow
  WILMER CUTLER PICKERING
    HALE AND DORR
  7 World Trade Center
  250 Greenwich Street
  New York, NY 10007
  (212) 230-8800
  david.gringer@wilmerhale.com
  emily.barnet@wilmerhale.com
  jared.grubow@wilmerhale.com

  Isley Gostin
  WILMER CUTLER PICKERING
    HALE AND DORR
  2100 Pennsylvania Avenue NW

Washington, DC 20037
(202) 663-6000
isley.gostin@wilmerhale.com

*Counsel for Underdog Sports, Inc. Underdog
Sports LLC, and Underdog Wagering LLC*